IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>DARRELL JOHN WILLIAMSON,<br><br>Defendant. | **ORDER and<br>MEMORANDUM DECISION**<br><br><br><br>Case No. 2:10-CR-414 CW |

Defendant Darrell John Williamson is charged with one count of possession of a firearm and associated ammunition in violation of 18 U.S.C. § 922(g)(1). Now before the court is Mr. Williamson's motion to suppress (Dkt. No. 26). This motion to suppress arises out of an allegedly improper search that police made of a duffle bag in Mr. Williamson's possession on April 24, 2010. Mr. Williamson asserts that the search of the duffle bag was unconstitutional, making the evidence against him obtained in that search inadmissable. Mr. Williamson accordingly moves to suppress all evidence obtained during the search of the bag and all related evidence.

The government argues, among other things, that Mr. Williamson has no standing to challenge the search because he could have had no reasonable expectation of privacy in the bag.

-1-

For the reasons below, the court finds that Mr. Williamson indeed lacks standing to challenge the search of the bag. Accordingly, Mr. Williamson's motion to suppress is DENIED.

**BACKGROUND**

On April 24, 2010, at about 12:30 a.m., Salt Lake City Police Officers Manzanares and Moutsos were on bicycle patrol in the area of the Gallivan Center. Both officers heard Mr. Williamson screaming from some distance away, getting their attention. The officers then saw Mr. Williamson kick over a large garbage can into the street. At that point, the officers rode up to Mr. Williamson to speak with him.

Mr. Williamson was alone and was carrying a duffle bag. As he spoke to Mr. Williamson, Officer Manzanares's first impression was that Mr. Williamson was drunk based on several factors, including Mr. Williamson smelling of alcohol, slurring his speech, and swaying. Officer Moutsos also observed similar signs that Mr. Williamson was drunk. Both officers have had training and experience identifying people under the influence of drugs and alcohol and testified that they believed that Mr. Williamson was under the influence of alcohol and maybe other drugs.

Officer Manzanares patted Mr. Williamson down, asked for his name, and sat him on the curb. Mr. Williamson's mood during this interaction went from compliant to angry and violent. Near the beginning of the conversation, Officer Manzaneres, who saw a case in the bag that he suspected might contain a gun, asked Mr. Williamson if he had a gun. Officer Manzaneres testified that Mr. Williamson said that he did, and said it was to kill the officer and others. As they continued to talk, Mr. Williamson became more and more agitated and threatening. At

some point, the officers decided to arrest Mr. Williamson and placed him in handcuffs.

Soon after cuffing Mr. Williamson, Officer Manzanares went to the duffle bag, which was nearby. He asked Mr. Williamson who owned the items in the bag. According to Officer Manzanares, Mr. Williamson first said that the bag belonged to a friend. Officer Manzanares then reached into the bag and began emptying it of its contents. Officer Manzanares testified that as he pulled out the case that contained the gun, Mr. Williamson quickly said that he had found the bag on the street. After finding the gun, the officers learned that Mr. Williamson had a felony conviction. Mr. Williamson was eventually booked into jail.

At an evidentiary hearing on this motion, Mr. Williamson testified about how he came to possess the duffle bag at issue. According to Mr. Williamson, sometime on the night he was arrested, he saw the bag on the ground near an outdoor restroom belonging to a Conoco station. He said that he saw a man enter the restroom. Mr. Williamson said that he waited for the man to leave the restroom and drive away before he picked up the bag. He testified that he then looked into the bag, discovering, among other things, shoes and a coat. He stated that he then put many of his own possessions that he had been carrying in his pockets inside the bag, including a camera and a music player that friends had given to him as gifts.

Mr. Williamson denied that he ever told the officers that the bag belonged to a friend or that he had found it. Instead, Mr. Williamson testified that he told the officers that they could not search his bag without a warrant. Mr. Williamson stated that the officers responded to his statement by roughing him up, including slamming his head on the ground, dragging his face across the pavement, and putting a knee in his chest.

There was indirect evidence at the hearing that after Mr. Williamson was arrested, police discovered that the bag and other items found on Mr. Williamson had been stolen, and that the bag and items had been had returned to the owner. In its latest brief, the government proffered direct evidence of this fact. Specifically, the government stated that the bag belonged to an out-of-town guest staying in a downtown hotel. The guest reported to police that at about 6:30 p.m. on the night Mr. Williamson was arrested, the guest left various items in his parked car. At about 8:30 a.m. the next morning, the guest discovered his car had been broken into. He reported several items stolen, including a gun case containing his Beretta PX4 .40 caliber handgun, a yellow Cabela duffel bag, a digital camera, a personal music player, a red-orange Cloudveil jacket, shoes, and other items. Mr. Williamson had these same or similar items on him when he was arrested. Mr. Williamson has not asserted that any of the factual assertions included in the government's proffer are inaccurate, and neither side has requested an additional evidentiary hearing on them.

In addition to its proffer, the government attached to its latest briefing a booking photo from the night Mr. Williamson was arrested. In that photo, there is no apparent injury to Mr. Williamson's face. Mr. Williamson does not dispute the authenticity of that photo.

## ANALYSIS

"When a defendant moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998) (citing *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995)).

Assessing a defendant's expectation of privacy "is a question of intent which may be inferred from words, acts, and other objective facts." *United States v. Mitchell*, 429 F.3d 952, 958 (10th Cir. 2005) (internal quotation and citation omitted).

The evidence is conflicting on whether Mr. Williamson exhibited an expectation of privacy in the bag. According the officers, Mr. Williamson twice disavowed owning the bag. Moreover, even crediting Mr. Williamson's story of how he found the bag, he likely would have known that the bag and its contents were lost and not abandoned. It would not have been surprising to Mr. Williamson, then, that the owner would have been looking for the bag. On the other hand, Mr. Williamson testified that he clearly informed the officers that he would not give them permission to search the bag. Such a statement would be a strong indicator that he believed he had privacy in the bag.

The court need not resolve this question. As explained below, even if Mr. Williamson subjectively believed that he had privacy in the bag, this expectation is not one society would recognize. If the court is wrong about society's expectations, however, it finds that the weight of the evidence is against Mr. Williamson on this issue and he did not manifest a subjective expectation of privacy in the bag. Even without considering the proffered evidence about the bag and it contents being stolen, Mr. Williamson's testimony was not credible. First, there were some internal inconsistencies in his story. Further, several facts he asserted, such as the police scraping his face, are contradicted by other evidence, like the photo showing his face free from any scrapes. Finally, several of his assertions are highly implausible, such as having received a digital camera and music player as gifts from friends and carrying those around in his pockets

until he found the bag.

Accepting the proffered evidence, which Mr. Williamson does not dispute, seals the question. Taking the government's proffer as true, it seems evident that Mr. Williamson stole the bag and items from the guest's car. That is because its makes no sense for someone else to steal a bag and valuable items and then simply drop everything next to a gas station. And even if Mr. Williamson did simply find the stolen bag, the presence of all the valuable items was a sure sign to him that the bag was lost or stolen.

In any event, as mentioned above, society would not be willing to recognize an expectation of privacy of the bag in this case. Even assuming that Mr. Williamson's testimony on how he found the bag is true, the circumstances clearly told him that he had no right to expect privacy in the bag and its contents. First, Mr. Williamson did not find the bag in the garbage or another place where one could safely assume that it had been abandoned. Instead, he found it near a restroom at a gas station, which suggests that someone had put it down to use the restroom and forgotten to pick it back up. Further, the items that Mr. Williamson admitted he found in the bag suggested that the bag was lost and not abandoned. Finally, Mr. Williamson found the bag at most a few hours before he encountered the police a few blocks away from where he says he found it. It was not though he had possessed the bag as his own for a long period of time during which he established expectations of privacy by placing his own personal items in the bag. Even if the court believed Mr. Williamson's story, then, society would not be willing to recognize that he should have a reasonable expectation of privacy in the bag. Under the circumstances of this case, no important interest of society would be protected by recognizing such a right.

As already explained, though, Mr. Williamson was simply not credible on the question of where he got the bag. Considering the indirect and proffered evidence, it is more likely than not that Mr. Williamson stole the bag. No one has a legitimate expectation of privacy in a stolen bag. *See U.S. v. Caymen*, 404 F.3d 1196, 1200 (9th Cir. 2005) ("The Fourth Amendment does not protect a defendant from a warrantless search of property that he stole, because regardless of whether he expects to maintain privacy in the contents of the stolen property, such an expectation is not one that 'society is prepared to accept as reasonable.'") (citation omitted). Moreover, even if Mr. Williamson simply found a bag full of valuable items such as a digital camera and music player, he knew or should have known that it was either lost or stolen. Society would not recognize that he had a valid expectation of privacy in the bag under those circumstances.

## CONCLUSION

For all of these reasons, the court concludes that Mr. Williamson lacks standing to challenge search of the bag. As such, the court need not address Mr. Williamson's arguments as to why the search was unconstitutional. Accordingly, his motion to suppress is DENIED.

DATED this 2nd day of August, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge